Good morning, your honors. If it pleases the court, my name is Robert Strickland, and I represent the plaintiff, appellant, former San Francisco Police Department Inspector Ron Reynolds in this appeal. In presenting this oral argument, I would like to reserve three minutes in rebuttal. There are several issues on appeal, and the first I would like to address is the dismissal of Inspector Reynolds' California Labor Code 1102.5 whistleblower claims following a 12B6 motion to dismiss. This motion was granted on the sole basis of an alleged failure to exhaust administrative remedies. This ruling was a mistake of law, as Labor Code Section 1102.5 does not contain an exhaustion requirement, nor did the California legislature ever intend for it to. But didn't the California Supreme Court in Campbell hold expressly that exhaustion was required? Campbell is a separate case that dealt with UC internal exhaustion remedies, and since that time, the California appellate court as well as the California Supreme Court have, in a sense, overruled it. Well, but the question is, did Campbell, at the time it was decided in 2005, declare the rule in California that exhaustion was required? And if so, did the legislature make a change in 2014 in response to the Campbell ruling? There wasn't a change. There was an admitted split in authority. And I think the controlling case to look at is Lloyd v. County of Los Angeles, which currently is the only California appellate decision interpreting the exhaustion requirement in a whistleblower context. And that case found that there is no exhaustion requirement. Well, let's go back to the first part of the question. In 2005, did the California Supreme Court not say, and I'm looking at 106 Pacific Reporter, third series, at 982, I guess it is, that as the Court of Appeals observed, the rule of exhaustion of administrative remedies is well established in California jurisprudence and should apply to Campbell's action. Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. Now, isn't that an express statement that exhaustion applied at least in 2005? To the internal UC exhaustion requirement. It doesn't say that, though. I mean, the holding in Campbell is that there is a rule of exhaustion of administrative remedies, and it applies here. But it doesn't say anything in the language I just read to you that it's limited only to claims brought against the UC system. Right, but that entailed a UC employee that failed to bring The factual basis. But what language can you point me to in Campbell that says we're announcing a rule that is applicable only if the California system is the litigant? Well, I think if we look at the holding in Lloyd v. County of Los Angeles and the California Supreme Court's just recent explicit finding or denial of review in McDonnell v. California and the order that McDonnell v. California be depublished Let me explain where I'm going with my question. You probably have anticipated it, but I'll be very candid with you. If Campbell stands for the proposition that as of 2005, the California Supreme Court had declared that exhaustion of administrative remedies is required, and if in 2014 the legislature made a change and said no, it is not, with regard to the question of retroactivity, we ask whether this was a clarification or a change. It looks to me like it was a change, without regard to what the legislature thought it might be doing, because under Marbury v. Madison, we get to say what the law is. We consider what the legislature says, but it's not controlling on the answer to the question. So if that's the case, then what language can you point to me in the legislative enactment that says this change in California law applies to all current, pending, as well as future cases? Okay. Well, we would rebut that there was a prior exhaustion requirement, but in addressing that question, the assembly did or the legislature did pass on January 1, 2014, Assembly Bill 263 and Senate Bill 666, which essentially have stated that there is no exhaustion requirement. It amended Labor Code 98.7 to read explicitly that there is no requirement that an individual exhaust administrative remedies or procedures. Now, if we look at the legislative notes for Senate Bill 666, the Senate stated this measure is similar to pending legislation, AB 263, which is its companion bill, and I quote, which clarifies that an employee is not required to exhaust administrative remedies or procedures in order to bring a civil action under any provision of the Labor Code. Do you agree with me that there is nothing in the statutory language of Section 244 that addresses the question of retroactivity? Because I don't see any words that come even close to saying that. Well, I think if we look at the rules of whether a law or a new enactment while litigation is pending applies retroactively, California, whether a legislation affected we look at whether it affected a procedural or substantive right. Procedural enactments not attaching new legal consequences but merely clarifying existing law will be given retroactive effect. And if we look at the language of Section 244 of the Labor Code as well as Section G of Labor Code 98.7, this is clearly a procedural statement from the California legislature. There's no new legal rights being created. There's no new legal liabilities. There's no altering of past legal rights or duties and no new legal consequences as a result of those amendments. These are procedural clarifications and retroactivity should apply. In fact, the California courts have already begun retroactively in reviewing these new statutes and amendments, began applying these laws retroactively to pending litigation. The other issue with regard to an exhaustion requirement, if I may go back, the California Supreme Court was explicit in its authorization and acceptance of Lloyd v. County of Los Angeles. If there's any other questions on retroactivity or the exhaustion requirement, I move on to the second issue on appeal. The second issue on appeal I would like to address is the dismissal of Inspector Reynolds' Federal and State wiretap claims. The issue on appeal here is whether a trier of fact potentially could have found that Inspector Reynolds had a reasonable subjective and objective expectation of privacy in his phone conversation that was recorded. I thought he took the call in the detective bullpen. He did take the call in the office. Weren't there other detectives that were working in the unit at the time? That is a disputed fact. That there were others in the room? Yes. Where's the dispute in fact? I saw that there was testimony from, is it Sidney, Detective Sidney Laws, that she was there and then apparently there was another male detective that he spoke with immediately after concluding the phone call? The undisputed facts in this case is that Is it disputed that those two co-employees, co-detectives were not there at the time? The testimony is that Sidney Laws was present when the phone rang and then left the office building. Okay. What about the other detective? That is a disputed fact. That he was there? I thought that Your client says he's not there? My client said when he was on the phone, he was not there, came at the end of the phone conversation. But he's, alright, so even though his voice is on the recording, came in mid-conversation. Correct. But I guess that begs the question though, does it not? If Detective or Inspector Laws was there when the phone rang and the other detective came in towards the end of the phone conversation, why would it be, why would a reasonable jury be able to conclude that he had a reasonable expectation of privacy when the call came in? Because Inspector Reynolds was at his own desk in the corner of this office and No, if this were a criminal case and the police officer is the one overhearing it, as we most often get this question, the notion that the speaker had a reasonable expectation of privacy while in a public place like this would melt pretty fast. It would be hard to take seriously. Is there any authority to support the proposition that talking in an office like this where people come and go, and that part appears to be undisputed because the most your client can say is that they weren't there the whole time, they came and went, there is a reasonable expectation of privacy such that others aren't allowed to listen? Right. The fact that my client What authority for that? I would point the court to the United States v. McIntyre, which is a very similar, almost identical fact pattern to the present. In that case, the appellate court overturned the granting of a summary judgment motion and found that it was a question of fact for the jury to determine the reasonableness of expectation of privacy. In that case, there was an Arizona police officer who was suspected of engaging in illegal activity. He was tape recorded by a coworker while that officer was sitting at his desk in his own office with the door open and with an admitted assistant within 15 feet of him. Those circumstances are almost identical to the fact pattern here. Really? You've got somebody who's in an office and somebody who's in an open bullpen. How are that, how is that all that similar? Well, I think when we're saying open bullpen, we're talking about a large office space that contains numerous cubicles, different rows, partitions. But not walls. I mean, the partitions, as I understand it, only come up to, what, three or four feet? Barely. If they stand up, you can see somebody's there, right? If you stood up, you can look over. But that's still So normal voice conversation is going to carry throughout the room, will it not? No. That is a disputed fact that it would carry. I worked in a cubicle once. I sure didn't have any private conversations there in the way that I might today. When I have an office, I'll be with the door open. So how is it disputed that somebody can't overhear? As a factual matter, I've worked in a cubicle. I know I can hear what goes on in the next cubicle. Right. But the question is fact sensitive as to whether my client had a reasonable expectation of privacy. If he is in an empty office building at his own desk in the corner of the room that has two walls on both sides But it's not an empty office building. That's the problem. I mean, this is in the middle of work shift at police headquarters, what, down at 850 Bryant. And there are, what, a dozen or so detectives and supervisors and clerical staff that are all working basically in a big room? But that's the issue. This is a fact sensitive. There were not those people working in the office at this time. It creates a tribal issue of fact. There were at least three of them, counting your client. Is there any testimony as to whether anyone else was present? No, there's testimony from my client saying that he was alone in these offices at the time. But that can't be right because Detective Laws turned the tape recorder on at some point right after he took the call. The testimony is that she came in clandestinely, put a tape recorder in the office and left. How can you come in clandestinely to your own office when you're all officing in a bullpen? You've got to go in and announce, hey, I'm coming in now, so if you've got any private conversations, don't conduct them. Kind of a knock and announce. This is a police area. He's calling on official business. I have really trouble with the proposition that the police somehow are not allowed to listen to the conversation. Well, the fact that he's a police officer in the police office does not... On a conversation that's not personal. On a police phone. He still does not waive his right to not be wiretapped and recorded. It's not a wiretap. It is a recording of one side of a conversation. Nobody clipped alligator clips to the phone lines or put some sort of a recording device on the phone itself. All we know is his side of the conversation. The law specifically prevents intentional recording without the consent of... Which law? California Penal Code 632. You've made a claim under the federal statute. That's not wiretapping under Title 18. Your Honor, I see that I'm a little on time. I better save it. Okay, we'll save it for you. Thank you. Thank you. Gershwin. Good morning, Your Honors. May it please the Court. My name is Andrew Gershwin. I represent Defendant Appelli, City and County of San Francisco. Sydney Laws, Padgett Mitchell, Heather Fong, and James Lynch. The District Court dismissed Plaintiff's claim for violation of Labor Code Section 1102.5 on the ground that Plaintiff did not exhaust his administrative remedies. There are two California Supreme Court cases that control this Court's determination of whether the District Court correctly dismissed this claim. The first case is Campbell v. UC Regents. The second case is McClung v. Employment Development Department. To cut to the chase, in Campbell, the California Supreme Court held that a plaintiff bringing suit for violation of Section 1102.5 must exhaust his or her available administrative remedies before filing a suit. Now, the first part of Campbell addressed internal UC administrative procedures,  however, the second part of the Campbell decision specifically addressed Plaintiff's argument that Section 1102.5 itself does not require exhaustion, and the Supreme Court reviewed the legislative history of Section 1102.5 and ruled that the history was ambiguous, but that in light of longstanding California judicial doctrine, it found that exhaustion is required before someone may bring suit under that provision. And, you know, Plaintiff Appellant just sort of ignores that part of Campbell's decision. Now, this subsequent case of Lloyd is bad law. It cannot overturn or overrule the California Supreme Court. In reaching its holding that exhaustion was not required for an 1102.5 claim, the Court did not discuss Campbell. It made a passing reference in the introduction about exhaustion, but it never analyzed or discussed Campbell. So, you know, what do we make of the fact that the Supreme Court did not take Lloyd up and did depublish McDonald? I think the ‑‑ I'm glad you raised that, because the depublication under California rule of court, blah, blah, blah, I don't have the site in front of me, but I did look it up. It's 8 point something. I got to confess, after 12 years of sitting on this Court, I've always been mystified as to exactly the impact of that. But in this case, it is true that the opportunity was there to undo Lloyd and ‑‑ I understand. But McDonald, you see, I think the reason they depublished it is it's moot. The California legislature in 2014 amended the law. Well, if you stir that into the mix, if it's moot, does that suggest that the Supreme Court views the legislative enactment as something that is retroactive, does affect past history, because it's merely a clarification and not a change in the law? Because if it did not go into effect until this year, then presumably what happened to McDonald and other cases still in the system would all be affected by ‑‑ or would all be governed by the prior version, the Campbell rule, rather than by what the legislature has enacted. Yeah. Well, under ‑‑ there is a California rule of court provision that provides that depublication is not in any way an expression of the court's view on the merits or opinion of the lower court's judgment. I wish I had the cite, but I don't. I'm aware of it. We're reading tea leaves here. Yeah, yeah. No, I understand. But I think, you know, in terms of this, is it a clarification or an amendment, you know, I think the McClung case is on point. I mean, Campbell held that exhaustion is required. And the new amendments say no, exhaustion is not required. The claim at issue in Campbell was 1102.5. The claim at issue here is 1102.5. And I just think, you know, the legislature and, you know, McClung cites to many cases. At the time the legislature acts, Lloyd is sitting there on the books, and you can describe it as bad law, but it is there. So couldn't it also be the legislature looks at this and says, well, it's not entirely clear what the law is here, because at least this one district court of appeals says this in Lloyd. So we're going to clarify it by saying not required. I mean, in essence, right, the legislature did, if you want to use clarification in that manner. Chose which way to go. Right. Exactly. And it settled it. And it's thinking prospectively in a general fashion. Correct. And it doesn't say in the legislation what would be helpful to us, but they're not writing for us. This is or is not meant to be retroactive. Right, which is why the default rule is that statutes are prospective only. There's no, you know, the legislative history, the most appellant counsel could cite to was one passing reference somewhere that this is a clarification. And that's it. No discussion. I mean, that's nothing. What's your response to Mr. Strickland's argument that it's purely a procedural change as opposed to a substantive one? First off, I think under the Tapia case and the Aetna case in California, courts don't focus on is it substantive, is it procedural. They don't look at labels. They look at the real impact on the parties involved in the litigation. So I think that's sort of a false dichotomy. By effectively overruling Campbell and the exhaustion requirement in the Labor Code, the statutes of limitation now are radically different. Under 2014, under these amendments, essentially the legislature gave a direct private right of action. First, anyone suing on any Labor Code violation, whereas, as the Gutierrez court noted before, in the Labor Code, there's about six, seven, eight, ten provisions that expressly provide for someone to go directly to court and bring a private right of action. But other than those sections, you have this administrative remedy scheme set forth in 98.7 that says If your intent was to eliminate exhaustion, you would have to do that, because wasn't the whole point behind the exhaustion requirement to give the agency the first opportunity to investigate and take enforcement action if the investigation suggested that was warranted? Right. Right. So if we now say that you can bypass the administrative scheme, you've got to give the claimant the right to bring a private attorney general action or just a claim on his own behalf for whatever the alleged wrong. And going forward, that is the law. I mean, there's no dispute there. You know, interestingly, this Private Attorney Generals Act that took effect in 2004, you know, Lloyd, one of the things in the DLSC, their position letter, that is that act expressly has an exhaustion administrative remedies requirement. That act, if the legislature wanted to do away with the exhaustion requirement, it could have. Instead, it imposed a separate exhaustion scheme for people that are suing for civil penalties. So, you know, the law, except for this bad case, Lloyd, which cannot overrule Campbell, it's a lower court. All of the law was that exhaustion is required. And now all of a sudden it's not. Statutes of limitations change. There's direct private right of action, whereas before there wasn't. Here, you know, plaintiff wasn't fired. He has no common law equivalent cause of action. His 1102.5 thing is purely statutory in every sense of the word. And so he, yes, was required to follow the statutory scheme before the Labor Commissioner for exhaustion. I can move on, address the other claims in the case. I also am happy, to the extent, you know, that the justices feel there's more issues to talk about. Breyer.  No justice is an answer. Gershengorn.  Breyer. We'd like to be, but we're not. Gershengorn. I get it wrong every time I call a judge a justice and a justice a judge. Breyer. We'll respond to either, as long as it's said in a respectful manner. Now, also, the legislative history of Senate Bill 666, which is the one that added the Labor Code Section 244 that says exhaustion is no longer required for anything unless the statute itself says so. In the legislative history, August 21st, in the Assembly Committee on Appropriations, the DLSC said, you know, courts in our office will see an increased number of claims for investigation and, you know, there could be a big increase here, but, you know, the effect on our budget won't be that bad because the Department believes that these additional cases will be further reduced by two-thirds due to the bill's provision that administrative remedies not be exhausted prior to bringing a civil action. This result, you know, this result will be only minor additional special fund costs. I mean, clearly the DLSC knew that if it's reducing the amount of cases by two-thirds that come before it, that I would assume that before there must have been some sort of exhaustion requirement. Gershengorn. Or that people feared there was an exhaustion requirement or, for whatever reasons, decided they were going to try the administrative remedies first. I mean, like I say, it's tea leaves here, so we're kind of reaching. Yeah. You know, also in terms of this exhaustion point, you know, the language in 98.7 of the Labor Code, which is, you know, other than this Private Attorney General's Act that has its own separate scheme, it's the only administrative remedy thing in the Labor Code, and it says, you know, someone may file a complaint with the Labor Commissioner. Well, that's what the Fair Employment and Housing Act says. You may file a complaint for discrimination with California's Department of Fair Employment and Housing, like the EEOC. But it's very clear under California law that's been construed as mandatory. It's not permissive. It's not, you know. So the legislature here overturned Campbell. And I don't think there's any way to get around it. I don't think calling this a merely procedural change works. I can come back to these arguments, but I'll move on. You know, with respect to the wiretap and unlawful recording claim, you know, with due respect, plaintiff appellant mischaracterizes the record, and, you know, facts are facts. And the record is there in writing for us to review. And what Mr. Reynolds said at deposition was that he only knew that Dolores Casaza, this inspector that sat next to him and they didn't like each other, he knew she wasn't there when he got this call or when he's on this call. And I asked him, what about everyone else? I don't recall anyone else being there. Are you sure? I don't recall. I don't recall. You know, Inspector Laws says I was there, Joe Cordes was there. This guy Cordes sits about two or three feet away from Reynolds. Interestingly, you know, this phone call, as soon as it ends, Cordes and Reynolds are talking about the call. Reynolds is like, yeah, that's my nut job calling. And Cordes is like, you know, who's the nut job, you or, you know. But, I mean, the call to say, I mean, one, it's about an ongoing criminal investigation. Reynolds later handed an arrest warrant package. The point is that there's no contested issue of material fact with regard to who was present because he can't say. Correct. And there's affirmative testimony from the other two people who were there that they were in fact present, at least for some of the time. Correct. And we know from all the other facts that it occurred at police headquarters in the Investigations Bureau, during the workday, on a police phone, in the bullpen, and as a matter of law, no reasonable jury could conclude that he had a reasonable expectation of privacy when he took the call. That's correct. In photographs of the bullpen, you know, were, are part of the record that can be reviewed. You know, I believe the partitions came up desk-high. We looked at them. Yeah. The, you know, and ironically, you know, the reason Mr. Reynolds was tape recorded was another inspector felt, rightly or wrongly, although the police department obviously felt rightly, that he was disclosing inappropriate information about the investigation, the ongoing investigation and his delivery of. That was ultimately what the chief disciplined him. Right. Correct. So is your argument that there's no nexus to any of these other claims with regard to the alleged harassment from the lesbian? No. Well, where I was going with that was that I think, you know, it's ironic for Mr. Reynolds to say that was a private confidential call when really he's disclosing confidential information to a suspect, which is a real questionable thing. I wasn't trying to tie it. For which he got disciplined. No, no, I understand. Okay. I guess, you know, the fact to me that it concerns an ongoing criminal investigation makes it even more, I think, difficult for Mr. Reynolds to say he had some sort of objectively reasonable privacy expectation on the call. Right. He wasn't talking to his doctor about the results of his recent health exam. Correct. I don't – I notice that I'm almost out of time. I will very briefly say, you know, the harassment claim again, I think the language in the appellant brief regarding Inspector Casaza versus the actual testimony that's in the record are pretty – And frankly, Mr. Strickland, I have some concerns with regard to the accuracy of the briefing and characterizing what the record shows. But the record is what the record is. With respect to the discrimination claims, Mr. Reynolds was transferred, at least according to whatever paper trail there is, based, well, in relation to complaints made about him by the district attorney's office, not about this phone call. And quite frankly, even if he was transferred out of sex crimes because of the phone call and not the district attorney's complaints, there's still no evidence that it had anything to do with his gender or his sexual orientation. It had to do with the phone call and what was disclosed. So I think that is just about my time. And unless there's more questions, I think I'm done. Okay. Thank you. Thank you. Mr. Strickland, I think you have a minute or so left in rebuttal. Thank you. I think the one issue I'd like to address that was just raised by counsel was the issue of the discrimination claims. And our primary concern, one of the primary concerns, is that the order from the district court based its dismissal of the discrimination claims on the evidence that Ron Reynolds was unable to connect his adverse employment action to his permanent transfer out of that department. Now, after that ruling came out, we had the opportunity to review Mr. Reynolds' file, and it was disclosed that the city had not produced a document that clearly evinced that his permanent transfer was a result of the investigation. This is the subject of your attempt to supplement the record with a letter from Chief Fong. Correct. But there's no dispute that that evidence was not before the district court at the time it ruled on summary judgment? Correct. Okay. That is undisputed. How do you get around a rule that says we don't supplement the record with evidence that wasn't presented to the district? I get around that it was the bad actions of the city and Rule 10e that we need to have a full idea of what the evidence was. We never had an opportunity, and we had no knowledge that this document existed until after the ruling had come forward. So under Federal Rules of Appellate Procedure, I believe 10e, that will make a complete record, and in the interest of due process, my client should have the right to produce that to the court so they have an understanding. Okay. You are out of time. Thank you very much. The case just argued is submitted.
judges: Duffy, Tallman, Clifton